referring to 23-2099 United States v. Gonzalez-Gurrola J.K. Theodosia Johnson on behalf of Mr. Gonzalez-Gurrola. The government agreed that four months best captured Mr. Gonzalez-Gurrola's culpability and cooperation in this case. He gave substantial assistance that led to the discovery of stash houses and bigger fish. This court has said that prosecutorial discretion is near absolute and cautioned against second-guessing it. Other circuits, too, have pointed out that the court is in a poor position to evaluate the defendant's cooperation. And the guidelines also point out that the court has to give substantial weight to the government's evaluation of the defendant's cooperation, especially in here, where it's hard to tell how much value and extent it was. Fast-track pleas, too, also reflect the government's allocution of resources. And here it decided its time and effort weren't worth this transport case. The court compounded its error when it refused to let Mr. Gonzalez-Gurrola have an opportunity to withdraw his plea and proceeded immediately to sentencing. And of course, the sentence was procedurally insubstantive and unreasonable. It was a substantial upward variance in a mine run case. The guidelines, well, the purpose of considering mine run cases is to avoid excessive sentencing similar cases with similar aggravating and mitigating factors. And here, the aggravating factor of having an unaccompanied minor was already accounted for in the guidelines. And there was nothing so egregious about his conduct of picking up a child in El Paso and attempting to drive her to Atlanta that warranted this upward variance. Is there anything in the record to show when the defendant knew that the girl was not a family member connected otherwise with the adult passenger? Nothing exactly on the record. I think the hunter and man admitted that he didn't know him. At what point? I'm not sure. Probably when they were at the Border Patrol checkpoint, when he invited scrutiny by saying that he crossed her illegally. The question in my mind is when the defendant knew this, that this girl was not connected to the man. And we don't know that. As with many things with this child, we just don't know. The court was blaming Mr. Gonzalez-Gurrola for not having information about the child. In his mind, he thought he was going to reunite her. So he must have been when he picked it up. He thought he was going to reunite her with her aunt in Atlanta. And he thought he was communicating with the aunt via cell phone. Turned out it was a smuggler. But he did everything he could to reunite this child with his family. But didn't the record show he lied about the fact that he was being paid for the transportation services? He did have that one lie. But everything else he did, and the government agreed, was completely helpful. And he gave them all the information that he had about the smuggling ring and about the child. And it's not Mr. Gonzalez-Gurrola's responsibility that she ended up in an immigration facility, despite what the district court seemed to think. What about Judge Strickland's skepticism that this basis for believing that this was the little girl's aunt was unbelievable because it was predicated on information that had been given by the cartel? That arguably isn't crazy, since he had already argued that he was doing this because of duress at the direction of the cartel. So why isn't that at least a reasonable basis for using that as a ground for an upward variance? Well, in 2016, the guidelines were amended on the immigration facility. And one of the testimonies there revealed that the cartels were actually transporting children to family members in other places, because especially in the Northern Triangle, the violence and the poverty were so bad that unaccompanied minors were there. And the cartels were legitimately transporting them. Legitimately is a strange word to use in that context. Excuse me? Legitimately seems to me a strange word to use in that context. Transport? No, legitimately. Oh, legitimately. Legitimately. So if you look at similar defendants under the Jason data, right, who are convicted of transporting and have the same criminal history category, which was zero. He had no sentence is nine months. And so she varied upward by approximately three times. And the case is just simply unremarkable. The only thing she based it on was the fact that the child ended up somewhere that no one knows. We know nothing about this child. And to blame Sir Gonzales Guerrero for the fact that he knew nothing, it's simply unfair and resulted in an unreasonable sentence. We're on plain error review, right? Well, I disagree. I think it was futile for Mr. Gonzales Guerrero's counsel to object and so that therefore it should be under abuse of discretion. Because it was clear from the beginning that there was no way she was going to accept a plea to with the actual plea. Up to the last plea hearing, both the government and Mr. Gonzales Guerrero were asking her to accept the plea. The government was actually asking for time served. We were asking for a year and a day. If for Mr. Gonzales Guerrero to have gotten the sentence under the guideline offense level, he would have had to have a criminal history of six. This is a man who has no criminal history. It's simply absurd to think that he got the sentence and that the 11C1C where he predicated his plea on this four month sentence was voluntary when she removed the benefit. And so that too, there's two main errors in this case. It was the problem with her blowing up the plea and then not allowing him to withdraw it. And then there's this incredibly large sentence variance. I mean, we know that the guidelines were designed to cabin the district court's discretion and here it's not cabbing it. Let me talk about withdrawal of the plea. It's clear that defense counsel knew that he had the right to withdraw his plea if the judge didn't approve the plea bargain because the attorney said that explicitly at the first hearing, at the guilty plea hearing. Is that correct? Correct. Yet he did not object, he or she, but I don't know the gender of the defense attorney at the time, but the defense attorney did not object to the judges not informing the defendant that he could withdraw his plea. Correct. So we would do that for plain error. I still think it's futile. I mean, it's her responsibility to... Well, it wouldn't be futile to inform the defendant that he could withdraw his guilty plea. Well, he may have informed him off the record. The important part here is that has to be on the record. That's how we ensure it's voluntary. Yeah, and it wasn't on the record. So you didn't object, the counsel didn't object, and that failure to object is reviewed, requires us then to review the failure to instruct the defendant that he could withdraw his plea. Preservation. We review that for plain error because it was, there was no problem with objecting. The defendant knew the law, the defense attorney knew the law, could easily have objected. The reason he didn't object, obviously, is there was no defense to the claim. Of course, you know, he would have accomplished nothing by refusing, by withdrawing the plea. He would have been found guilty and he would have lost any benefit from cooperating by pleading. Well, not necessarily, right? He did have a duress defense that he could have taken to trial if he wanted to. He supposedly was threatened by this. The district court admitted that there were allegations. He didn't find them to be unreliable. And preservation is not an end of itself. It's a means to fair outcome. With respect to the standard of review, though, do you really think that there was an excuse for defense counsel not to object to the failure to tell the defendant that he could withdraw his plea? I don't think it was defense counsel's burden there. Why is it defense counsel's burden to object to error? It was not defense counsel's burden to inform Mr. Gonzales-Varela that he had the opportunity to withdraw his plea. That was clearly on the district court and she cannot abdicate that simply because defense counsel should have done it. And defense counsel should have objected to the failure to inform the defendant of that. Preservation. Why? Go ahead. Preservation isn't synonymous with best practices. No, no. It's... If anything, it's stronger. You have to object. There's no excuse for not objecting to the failure to instruct the defendant that he could now withdraw his plea. I think that given the entire record, there is, to the very end, both the government and Mr. Gonzales-Varela's counsel were urging her to accept the plea. And then once she rejected it, she just barreled on with, I'm going to sentence you. Objection from the defense counsel. Yes, we'll go round and round on that, Your Honor. Will you assume for a moment that there is plain error? Yes. That we review for plain error? Yes. Okay. Then how have you shown that the elements of plain error are here? So it does affect his substantial rights, and that goes back to whether or not it's actually voluntary. It's a binding plea. He gave up... He agreed to plead guilty for a specific benefit, and when that benefit was removed, you can no longer assume that he would continue to plead guilty. It's not like Dominguez-Benitez, where it was not a binding plea agreement there. So there was no question. Where is the evidence in the record? The defendant has the burden of showing prejudice. Where in the record is there any indication that the defendant, if told he could withdraw the plea, would actually have withdrawn the plea? Because, as I said, it was a binding plea agreement. It was premised on this, on this benefit that he has gotten, which is why it's so different from Dominguez-Benitez, because there the question is, would he have still pled? And here the question is, would he have pled then? Would he have gone back and tried to renegotiate a different deal? Would he have gone to trial with the duress defense? We don't know. We did know in Dominguez-Benitez that he said specifically he didn't want to go to trial, on the record at least twice. So there is a... It affected his choice in defense, right? And his ability to charge his own defense. And that's just fundamentally one of the precepts of our system. And to take that choice away from him and not allow him the opportunity to try to renegotiate or go to trial, it's just unfair. It does affect his substantial rights. And as for the integrity, I think from the beginning, it gave the impression that she was meddling and that she was not a fair and impartial arbitrator. I'm going to reserve the rest of my time. Thank you. Mr. Keeney. Good morning, Your Honors. Sorry. May it please the Court. My name is Emil Keeney for the United States. And I'll start by addressing the last points that you all were discussing, but of course I'm happy to go wherever you want to go with this. On the issue of whether the district court committed plain error by not informing defendant of his right to withdraw his guilty plea, we agree that the first two prongs are satisfied. It is the obligation of the district court to do that. And the reason why we're on plain error, though, is because the defense counsel didn't object. So I think that affects the standard of review. But I think we prevail on the third prong of this because defendant hasn't identified any defense that would have made it reasonable for him to go to trial. What about coercion? Coercion? Well, I think that could be a defense in some circumstances. But what the record shows here is that that's what he told Border Patrol agents at first. But when they searched his phone, it turned out that he responded to what he perceived as a job opportunity and agreed to do this to transport these two individuals in exchange for money. So I think he could get up and make that defense, but it's not a defense that's likely to succeed because the contents of his testimony and the testimony of the traffickers didn't back that up. What about the argument that if he withdrew his plea, they could have negotiated a better, you know, a different plea agreement? I think there may be some circumstances where that might be the case. But where the district court has said, rejected it on the ground that my, I believe the sentence you've agreed to is too low and I think 32 months is appropriate, I don't think that was a likely option either that they would have been able to, that we would have been able to reach an agreement that would give him a lower sentence than he got and that would have satisfied the district court. As for the jury nullification argument, I think the problem with that is, and that's something that defense counsel raised in the reply brief. Said, well, he may well have taken a shot because, you know, and he was already facing an upward variance. But I think the problem with that is that the district court had also told him in response to defense counsel's questioning about the likely sentence, the district court had mentioned, I'll give him 32 months if he continues based on his pleading guilty, leaving it open at least that he might get a higher sentence if he went to trial. So I don't think there's any way that the third prong here is wrong. With respect to the rejection of the plea agreement itself, the district court, this court's decision in Sandoval Enrique, I think answers that, at least with respect to whether the district court properly rejected the sentence bargain. The district court has wide discretion to do that. And although we would like the district court always to do what we want as a government, that doesn't always happen. And we didn't think we can make out a case that the district court abused its discretion here. With respect to the other portion of the argument, the challenge to the rejection of the plea agreement, the second challenge is that, well, defense is arguing this infringed on the government's prosecutorial discretion to bring charges and not to bring charges because of the provision in the agreement that states that if you sign this agreement, we, U.S. Attorney's Office, are not going to bring any further charges arising out of this incident. And I don't think that's a provision that's in every plea agreement that I'm aware of, and it basically exists to protect the defendant and to give them assurance that we're not going to bring further charges out of this. It doesn't mean that there are actually charges that we have consciously considered and decided not to bring. And so, but even if you considered that as making this a charge bargain or at least partly a charge bargain, a hybrid bargain,  the district court said that it was concerned about the sentencing aspect of the agreement. The district court didn't say, look, I think you should have brought other charges. Look, this guy's clearly guilty of something else. Why aren't you bringing those charges instead? And I don't like that. The district court didn't say anything about that provision. So unless the court has other questions, we would ask you to affirm this, the district court's sentence. Tim, do you have a question? Okay. I had a question about procedural reasonableness. Your adversary argues that the district court at sentencing didn't consider the elephant in the room, the fact that the defendant had cooperated. And you point out, I think, correctly, that at the third of the four proceedings that Judge Strickland did say, you know, that's why I'm not, I think when defense counsel reiterated that the defendant had cooperated, the prosecutor had reiterated that, and Judge Strickland said, yeah, that's why I'm not inclined to give him more than 32 months. The problem is that that was prior to the sentencing. At the fourth of the proceedings is when the judge imposed the sentence, like if I say something now and then we go back and issue an opinion, well, it's all sort of in court until Judge Strickland had imposed the sentence. So is defense counsel correct legally that just mentioning something, you know, prior to sort of anticipation of imposing the sentence, she failed to consider or failed to discuss a very significant factor that would bear on the reasonableness of the sentence? What's your response? So you're asking specifically whether, if she didn't mention it specifically at the fourth sentencing hearing? Yeah, which is the only proceeding in which she's actually imposing the sentence. Right. So at sentencing, can you really say, well, and how do we in the future say, well, it's okay, District Judge, if you don't consider the significant, discuss the significant factors bearing on the sentence, as long as you did it in previous proceedings, at the arraignment, you know, for example, or at a pre-trial status conference. Why isn't it a problem that she didn't discuss this at sentencing? Well, I think she did allude to it, and I'll point you to the provision is, well, in two ways. In one way, she alludes to the previous three parts of the sentencing proceeding and says, I'm considering all the arguments that were made there, because that issue was extensively discussed at the second and third hearings. I'm referring to page 56 of volume 3. And then she does say, I'm considering the argument that he has attempted to right the wrongs that have happened in this case, and that's at lines 15 and 16. So I think she's at least alluding. At what page? That's at page 56 of volume 3. Okay, gotcha. Yeah, gotcha. Okay. And that's during the fourth sentencing hearing. I see. Yeah. So she's referring to it in those two ways. And I think the parties also considered these proceedings to be related, these four hearings that she held. And defense counsel didn't get up again and say, well, look, you should also consider the cooperation. I don't see you considering that. So for those reasons, we think she did mention it at the fourth sentencing hearing, at least allude to it. She didn't discuss it as extensively as in the second and third, but I think she probably felt that, look, I've gone over this before. We all know what I've gone over before. But she did mention it. It was on her mind. Are there any other questions from the panel? Thank you, counsel. All right. Thank you very much. We have a little time left. All right. So the point in which you need to consider the cooperation is when you're rejecting the plea agreement. You have to consider why the government offered the plea it did and then give your reasons it didn't. And she didn't address the cooperation in that sense. She only addressed it in regards to the sentencing. So that was error. And it didn't give appropriate deference to the government's decision to offer the fast track in lieu of the 5K. And it didn't give district court deference. And I also just want to point out that from a policy standpoint, allowing the district court to set its own policy, and I understand they're allowed to disagree with policy statements, but here, the unintended consequence can be that when a transporter is confronted with an unaccompanied minor, that they're just going to leave them, right? Because why would you take the risk of having the unaccompanied minor in your car if you're going to get hammered on it? It's much easier just to leave the child on the side of the road. It's just an unreasonable sentence in a mine run case. Please reverse. Thank you, Counsel. Case is submitted, Mr. King. Your excuse, but it's yours.